## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MASSACHUSETTS

_____ )
                                          )
MARK B. GALVIN and JENNY G. GALVIN,       )
                                          )
              Plaintiffs,                 )
                                          )
v.                                        )
                                          )
U.S. BANK, NATIONAL ASSOCIATION, AS       )
TRUSTEE RELATING TO CHEVY CHASE           )
FUNDING, LLC MORTGAGE BACK                )    Civil Action No. 14-14723
CERTIFICATES SERIES 2007-1, MORTGAGE      )
ELECTRONIC REGISTRATION SYSTEMS,          )
INC., and CAPITAL ONE, N.A., a/k/a        )
CAPITAL ONE BANK, f/k/a CHEVY CHASE       )
BANK, FSB,                                )
                                          )
              Defendants.                 )
_____ )

## NOTICE OF REMOVAL

Defendants, U.S. Bank, National Association, as Trustee Relating to Chevy Chase

Funding, LLC Mortgage Back Certificates Series 2007-1 ("U.S. Bank") and Mortgage

Electronic Registration Systems, Inc. ("MERS," and together with U.S. Bank, the

"Defendants"), give notice, pursuant to 28 U.S.C. §§ 1441 and 1446, of the removal to this

Court of a civil action commenced in the Dukes County Superior Court (Massachusetts)

identified below.[1]  Removal is appropriate because the amount in controversy exceeds the sum

---

[1] Defendant Capital One, N.A., a/k/a Capital One Bank, f/k/a Chevy Chase Bank, FSB ("Capital One") has not yet provided consent to remove given that they have yet to be served with process according to the online Superior Court docket.  Under 28 U.S.C. § 1446(b)(2)(A), "When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action."  This is known as the "rule of unanimity."  "[U]nserved defendants are excluded from the rule of unanimity because [i]t would be impractical, if not impossible, to require unserved defendants to join in the notice of removal."  Gentile v. BioGen IDEC, Inc., 934 F. Supp. 2d 313, 321 n.7 (D. Mass. 2013) (quoting American Law Institute's "Federal Judicial Code Revision Project" (2004) at 366 n.28)).  Therefore, as Capital One has not received service, U.S. Bank and MERS do not need to obtain Capital One's consent to submit this Notice of Removal.

or value of $75,000 and the parties are citizens of different states.   Therefore, this Court has original jurisdiction pursuant to 28 U.S.C. § 1332.   Defendants deny the allegations contained in the state court pleadings and file this Notice without waiving any rights, defenses, exceptions, or obligations that may exist in their favor in state or federal court.   In support of this removal, Defendants state as follows:

I.      The Action.

Plaintiffs, Mark B. Galvin and Jenny G. Galvin (collectively, the "Plaintiffs"), filed a Complaint (the "Complaint") against the Defendants in the Massachusetts Superior Court for Dukes County on November 18, 2014.   The case is titled Mark B Galvin and Jenny G. Galvin v. U.S. Bank, National Association, as Trustee Relating to Chevy Chase Funding, LLC Mortgage Back Certificates Series 2007-1 et al., civil action number 1474CV00055 (the "State Action").   Defendants received a copy of the complaint on November 24, 2014.   A copy of the Complaint is attached hereto as Exhibit A.   As of today, Defendants have not been served with the Complaint.   Removal is timely because this Notice is filed within 30 days of the date that Defendants received a copy of the Complaint.

II.      Pleadings and Notice To State Court.

Pursuant to 28 U.S.C. § 1446(a) and Local Rule 81.1, certified copies of all pleadings, records, orders and proceedings from the Dukes County Superior Court will be filed with this Court.    Contemporaneous with the filing of this Notice, Defendants provide notice to Plaintiffs' counsel and will notify the Dukes County Superior Court of this removal.

III.    Statement of Statutory Basis For Jurisdiction.

This Action is within the original jurisdiction of the United States District Court pursuant to 28 U.S.C. §§ 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

A.    This Court Has Jurisdiction Pursuant To 28 U.S.C. §§ 1332 (Diversity).

As a basis for removal, this Action is within the original jurisdiction of the District Court under 28 U.S.C. § 1332, which provides, in pertinent part, that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States." 28 U.S.C. § 1332(a)(1).  This Action satisfies both of these statutory requirements.

i.    *The Parties Are Citizens Of Different States*.

Plaintiffs allege that they have residential addresses in both Rye, Rockingham County, New Hampshire and Tisbury (Vineyard Haven), Dukes County, Massachusetts.  Compl. ¶ 1. Plaintiffs do not, however, clarify which address is their primary residence for purposes of diversity citizenship.  Plaintiffs contend that Defendant U.S. Bank's state of registration is unknown, but that it has a mailing address in Cincinnati, Ohio.  Compl. ¶ 2.  U.S. Bank is a subsidiary of U.S. Bancorp., which is a citizen of Delaware with a principle place of business in Minnesota.  See U.S. Bank's Corporate Disclosure filed herewith.  Defendant MERS is a Delaware citizen with a principle place of business in Virginia.  Compl. ¶ 3.  Plaintiffs assert that Defendant Capital One is a citizen of Virginia.  Compl. ¶ 4.  Accordingly, Plaintiffs' allegations that they are citizens of either Massachusetts or New Hampshire and that Defendants are not citizens of either Massachusetts or New Hampshire establishes complete diversity under 28 U.S.C. § 1332.

ii.        *The Amount In Controversy Exceeds $75,000.*

In calculating the amount in controversy, the Court should consider the total amount of monetary relief that the plaintiff seeks to recover, or the financial impact the relief sought would have on the defendant.  See Richard C. Young & Co. v. Leventhal, 389 F.3d 1, 3 (1st Cir. 2004) (The amount is measured by "the judgment's pecuniary consequences to those involved in the litigation."); see also Dept. of Recreation & Sports v. World Boxing, 942 F.2d 84, 90 (1st Cir. 1991).  When a plaintiff seeks equitable relief, "the amount-in-controversy is 'measured by the value of the object of the litigation.'"  Aliberti v. GMAC Mortg., LLC, 779 F. Supp. 2d 242, 245 (D. Mass. 2011) (quoting Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977)); see McKenna v. Wells Fargo Bank, N.A., 693 F.3d 207, 210 (1st Cir. 2012) (injunctive relief); Morse v. Residential Credit Solutions, Inc., 2012 U.S. Dist. LEXIS 17324, 2012 WL 458492, at *1 (D. Mass. Feb. 13, 2012) (declaratory judgment); Bedard v. Mortg. Elec. Registration Sys., Inc., 2011 U.S. Dist. LEXIS 51800, 2011 WL 1792738, at *1 (D.N.H. May 11, 2011) (injunctive relief) (citing Hunt, 432 U.S. at 347).  "In cases that seek equitable relief against foreclosure sales, the fair market value of the property to be foreclosed upon is an acceptable measure of the amount in controversy for purposes of diversity."  Morse v. Residential Credit Solutions, Inc., 2012 WL 458492 (D. Mass. February 13, 2012) (citing Bedard, 2011 WL 1792738, at *2-3).

In November of 2006, Plaintiffs allege that they obtained a mortgage loan from "Chevy Chase Bank, FSB[2]" in the amount of $2,385,000.00, which was secured by a mortgage (the "Mortgage") on 14 Skip Jack Way, Tisbury (Vineyard Haven), Dukes County, Massachusetts (the "Property").  Compl. ¶¶ 5, 6, and 7.  In their complaint, Plaintiffs seek both legal and

---

[2] In February 2009, Capital One acquired Chevy Chase Bank, FSB and re-branded it "Capital One Bank."

equitable relief.   Plaintiffs seek $250,000.00 in damages for alleged breach of contract, violations of G.L. c. 93A, trespass, negligence, breach of the implied covenant of good faith and fair dealing, and intentional and/or negligent infliction of emotional distress.   See Compl. ¶¶ 114-148, the Wherefore Clause and the Civil Action Cover Sheet.   Additionally, Plaintiffs request equitable relief in the form of a declaratory judgment that, among other claims, U.S. Bank, an assignee of the Mortgage, has no right, title, or interest in the Mortgage or note, that U.S. Bank lacks standing to foreclose on the Property, and that any foreclosure based on assignments of the Mortgage or note are void.   See Compl. ¶¶ 109-113 and the Wherefore Clause.   The value of the security interest and note is the "object" of Plaintiffs request for declaratory judgment in the amount of $2,385,000.00.   Therefore, the amounts at issue in this action are $250,000.00 in monetary relief and $2,385,000.000 in equitable relief.   Because the damages sought exceed $75,000, the amount in controversy requirement is met.

IV.   <u>Conclusion</u>.

Defendants respectfully request that this Court assume jurisdiction over this matter and that no further proceedings be held in the Dukes County Superior Court.   To the extent that the Plaintiffs challenge this removal, Defendants request the opportunity to brief and argue any issues or questions regarding this Court's jurisdiction.

*[SIGNATURES ON FOLLOWING PAGE]*

Respectfully submitted,

U.S. Bank, N.A., as Trustee Relating to Chevy
Chase Funding, LLC Mortgage Back Certificates
Series 2007-1 and Mortgage Electronic
Registration Systems, Inc.,

by their attorney,

 /s/ *Kevin P. Polansky*
David E. Fialkow (BBO# 666192)
David.fialkow@nelsonmullins.com
Kevin P. Polansky (BBO# 667229)
Kevin.polansky@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP
One Post Office Square, 30th Floor
Boston, Massachusetts 02109
p.   (617) 573-4700
Dated: December 24, 2014          f.   (617) 573-4710

## CERTIFICATE OF SERVICE

I, Kevin P. Polansky, hereby certify that this document filed through the ECF system
will be sent electronically to the registered participants as identified on the Notice of Electronic
Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on
this date.

Dated: December 24, 2014                    */s/ Kevin P. Polansky*

# EXHIBIT A

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT

DUKES, ss
County

Superior Court Department
Docket No. DUCV-2014-_____

| | |
|---|---|
| Mark B. Galvin and Jenny G. Galvin,<br>Plaintiffs<br>v.<br>U.S. Bank, National Association, as Trustee<br>Relating to Chevy Chase Funding, LLC<br>Mortgage Back Certificates Series 2007-1,<br>Mortgage Electronic Registration Systems,<br>Inc., Capital One, N.A., a/k/a<br>Capital One Bank, f/k/a Chevy Chase<br>Bank, FSB.<br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

NOW COMES Plaintiffs Mark B. Galvin and Jenny G. Galvin ("Plaintiffs" or the

Galvins" as the case may be) by and through counsel and pursuant to Mass. R. Civ. Pro.

and the Rules of Superior Court files their Complaint against the above-referenced

Defendants.

1.)     The Galvins are natural persons with residential addresses of 17 Heather Road,

Rye, NH and 14 Skipjack Way, Tisbury (Vineyard Haven), MA.

2.)     Defendant "U.S. Bank, National Association as Trustee Relating to Chevy Chase

Funding, LLC Mortgage Back Certificates Series 2007-1" ("U.S. Bank") is an entity

whose state of registration is unknown but U.S. Bank is listed with the Federal Deposit

Insurance Corporation ("FDIC") and the Office of the Comptroller of the Currency

("OCC") as having a mailing address of 425 Walnut Street, Cincinnati, OH 45202.

1

3.)    Defendant Mortgage Electronic Registrations Systems, Inc., ("MERS") is a Delaware corporation with a mailing address of 1818 Library Street, Suite 300, Reston, VA 20190 with a registered agent for service of process in Massachusetts of CT Corporation 155 Federal Street, Suite 700, Boston, MA 02110.

4.)    Defendant Capital One, N.A., a/k/a Capital One Bank, f/k/a Chevy Chase Bank, FSB, ("Capital One") is a national association with an address of 1680 Capital One Drive, McLean, VA 22102

5.)    The Galvins own the real property (the "property" or the "premises" as the case may be) located at 14 Skip Jack Way, Tisbury (Vineyard Haven), MA by virtue of a deed recorded at Book 668, Page 518 of the Dukes County Registry of Deeds.

6.)    On or about November 15, 2006, the Galvins took out a loan on the property.

7.)    The Galvins executed a mortgage to MERS as "mortgagee" on or about November 15, 2006 (the "MERS mortgage").

8.)    As a result of executing a mortgage with MERS as the "mortgagee", the Galvins are and were in contractual privity with MERS at all pertinent times as parties engaged in a contract, i.e. the MERS mortgage.

9.)    The "MERS system" is an "off-record", electronic system which purports to track the sale, transfer and assignment(s) of interests in notes and mortgages – including the Galvins - in order to avoid having to publicly record assignment(s) of such interests.

10.)   As a result of the contractual privity they maintain(ed) with MERS, the Galvins are/were also third-party beneficiaries of the MERS system as it relate(s) to the Galvins' mortgage loan.[1]

11.)   MERS requires written agreements with any parties who utilize the MERS system known as MERS "membership agreement(s)" by and through such parties become MERS "members".

12.)   Only a duly authorized MERS "member" can act with respect to a MERS mortgage – including the Galvins'.

13.)   The action(s) of MERS members are governed exclusively by MERS "Rules of Membership" or "MERS rules" which all MERS members are required to strictly follow.

14.)   Under MERS rules, only a MERS member and not MERS itself can execute an assignment of a MERS mortgage – including the Galvins' mortgage.

15.)   Under MERS rules, MERS only acts as the mortgagee of record and cannot perform any independent action(s) by or on its own behalf including but not limited to

---

[1]See the benefits for borrowers as "beneficiaries" under the MERS system at http://www.mersinc.org/about-us/faq#whatdoesmersasoriginal:

### How does MERS benefit borrowers?

MERS as original mortgagee eliminates breaks in the chain of title, resulting in less work and lower fees paid by the lender—fees that would ultimately be passed down to the homeowner. MERSCORP Holdings, Inc. provides access to data in the MERS® System free of charge to homeowners, county officials, and regulatory officials (subject to privacy restrictions). Homeowners can access the data on their mortgage loans registered on the MERS® System through MERS® Servicer ID online or by phone at 1-888-679-6377.

See also *Spinner v. Nutt,* 417 Mass. 549, 555 (1994): "In order to recover as a third-party beneficiary, the plaintiffs must show that they were intended beneficiaries of the contract between the defendant and the trustees, *Rae* v. *Air-Speed, Inc.,* 386 Mass. 187, 195 (1982), quoting *Brewer* v. *Dyer,* 7 Cush. 337, 340 (1851). A party is an intended beneficiary where "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Id.* at 194, quoting Restatement (Second) of Contracts § 302 (1) (b) (1981)."

3

independently assigning any interests in MERS mortgage(s) – including the Galvins' mortgage interests.

16.) An assignment of any interest(s) in a MERS mortgage – including the Galvins' mortgage interests - that is/are performed by a non-MERS member is against MERS rules.

17.) Any action contrary to MERS rules regarding a MERS mortgage – including the Galvins mortgage - is void and of no legal effect.

18.) As third party beneficiaries of the MERS system, the Galvins have standing to investigate and challenge whether, or if, MERS rules and MERS membership agreement(s) were followed with respect to the sale(s), transfer(s) and/or assignment(s) of their mortgage loan by and through the MERS system.

19.) A failure of MERS or any of its members involved with the Galvins' mortgage loan to comply with the MERS rules in the sale(s), transfer(s) and/or assignment(s) of the Galvins' mortgage loan would render such sale(s), assignment(s) and transfer(s) voidable and/or void with the Galvins having specific legal standing – as a result of their contractual privity with MERS – to assert challenge(s) any such improper or defective sale(s), assignment(s) and/or transfer(s) of the MERS mortgage as voidable and/or void.

20.) MERS never engaged in any oversight or supervision of any MERS member involved with the MERS mortgage with respect to the sale(s), transfer(s) and/or assignment(s) of the MERS mortgage.

21.) MERS failed to supervise or any of the actions of an MERS members involved with the MERS mortgage with respect to the sale(s), transfer(s) and/or assignment(s) of the MERS mortgage.

4

22.) At no relevant time did MERS maintain any systems, policies or procedures to confirm or ensure that its members complied with applicable MERS rules and MERS membership agreements with respect to the sale(s), transfer(s) and/or assignment(s) of the Galvins' mortgage loan.

23.) The MERS mortgage was recorded in the Dukes County Registry of Deeds in Book 1101, Page 814.

24.) Also on November 15, 2006, Mark B. Galvin executed a promissory note (the "note") in the amount of $2,385,000.00 to "Chevy Chase Bank FSB".

25.) On November 15, 2006, "Chevy Chase Bank, FSB", the "Lender" for whom MERS was supposedly acting under the MERS mortgage, was not a MERS member and was not party to a MERS membership agreement.

26.) Sometime in 2007, the Galvins' mortgage loan was alleged to have been sold to U.S. Bank under the terms of the "Chevy Chase Funding, LLC Mortgage Back Certificates Series 2007-1" Trust.

27.) Upon information and belief, the "Chevy Chase Funding, LLC Mortgage Back Certificates Series 2007-1" Trust is a New York trust formed under and governed by the laws of the state of New York.

28.) Sometime in 2007, the "Chevy Chase Funding, LLC Mortgage Back Certificates Series 2007-1" Trust "closed" by its own terms and thereafter no loans, including the Galvins, could be legally sold or transferred into the Trust pursuant to the terms of the trust and applicable law. Any such transfers are and were void.

29.) Chevy Chase Bank, FSB the predecessor in interest to Capital One, failed to conduct the sale, assignment and/or transfer of the Galvins' mortgage loan to U.S. Bank

5

in accordance with the requirements of the terms of the "Chevy Chase Funding, LLC Mortgage Back Certificates Series 2007-1" Trust or New York law all as may be applicable.

30.) Between the time the Galvins' mortgage loan was originated in 2006 and present, the servicing of the Galvins' mortgage loan account was transferred at least three (3) times from Chevy Chase Bank to Capital One to "Specialized Loan Servicing, LLC" ("SLS") (collectively the "servicers").

31.) The servicer(s) acted at all pertinent times as agents for U.S. Bank with U.S. Bank's apparent and actual authority to act, in all respects with regard to the Galvins' mortgage loan.

32.) The action(s) and/or omissions of the servicer(s) with respect to the Galvins' mortgage loan are attributable to U.S. Bank since the servicer(s) acted with the apparent and actual authority of U.S. Bank and with U.S. Bank's knowledge and approval.

33.) At all pertinent times, the servicer(s) are/were required to service the Galvins' mortgage loan, including with regard to properly considering the Galvins for various loss mitigation alternatives, in compliance with required written servicing agreement(s) by and between U.S. Bank and the servicer(s) and in accordance with applicable law(s) and regulation(s).

34.) No evidence of any written servicing agreement(s) by and between any of the servicers and U.S. Bank has ever been provided to the Galvins - despite multiple requests to provide same - and thus any written servicing agreement(s) by and between the servicers and U.S. Bank regarding the Galvins' mortgage loan is/are denied to exist.

35.)   U.S. Bank never engaged in any oversight or supervision with regard to the actions of the servicers and the servicing of the Galvins' mortgage loan.

36.)   U.S. Bank maintained/maintains no policies or procedures for supervising the actions of the servicers and the servicing of the Galvins' mortgage loan.

37.)   In February 2009, Capital One acquired Chevy Chase Bank, FSB and re-branded it "Capital One Bank".

38.)   At some point in late 2009, the Galvins fell behind on their payments.

39.)   On or about November 27, 2009, Andrew S. Harmon ("Harmon") executed an "Assignment of Mortgage" from MERS to "U.S. Bank National Association, as Trustee of CCB Libor Series 2007-1 Trust" which purported to assign *the note and mortgage* (the "1st MERS assignment") to "U.S. Bank, N.A. as Trustee for CCB Libor Series 2007-1".

40.)   Paragraph 20 of the MERS mortgage contract required/requires if there is a transfer of the interests in the note that the interests in the mortgage (the "Security Instrument") be simultaneously assigned and transferred together with the note.

41.)   The Galvins were never notified of any assignment or transfer of the note and mortgage (collectively the Galvins' "mortgage loan") by or from MERS or any other party.

42.)   The 1st MERS assignment was recorded in the Dukes County Registry of Deeds in Book 1198, Page 480.

43.)   Between May and October 2010, after being solicited by SLS, the Galvins attempted to obtain a modification of their mortgage loan by submitting requested documentation to SLS.

7

44.)     Despite having submitted all requested documentation in a timely manner, SLS

never provided the Galvins with a response to their request(s) for loss mitigation and

never made any offer(s) to the Galvins to modify their loan.

45.)     On or about November 22, 2010, U.S. Bank filed a lawsuit relative to the Galvins'

mortgage loan in Dukes County Superior Court in Docket No. DUCV-2010-0072 to

"Reform Mortgage and Remove Cloud on Title".

46.)     In DUCV-2010-0072, U.S. Bank, among other relief, sought to "expunge and

nullify" the 1st MERS assignment alleging that the Galvins' mortgage loan was

mistakenly assigned to a "non-existent entity".

47.)     On or about March 2, 2011, SLS sent a "Notice of Default and Intent to

Foreclose" notice to the Galvins regarding amounts due on their mortgage loan.

48.)     In the event of a default, Paragraph 22 of the MERS mortgage required/requires a

default/right to cure notice containing certain specified information to be sent to the

Galvins before any action could be taken to foreclose under the terms of the MERS

mortgage and applicable law.

49.)     The March 2, 2011 default notice failed to identify the owner or "Lender" of the

Galvins mortgage loan anywhere in the notice and falsely identified SLS as the "current

creditor to whom the debt is owed".

50.)     The March 2, 2011 notice of default was not in compliance with Para. 22 of the

MERS mortgage regarding default notice(s) and was fundamentally unfair to the Galvins

because it:

   a.) failed to identify the true owner or "Lender" of the Galvins' mortgage loan;

8

b.) falsely stated that SLS was the "creditor" to whom moneys were owed when, if anything, SLS was merely the servicer of the Galvins' mortgage loan;

c.) was not from the "Lender";

d.) merely listed a total amount purportedly due from the Galvins on March 2, 2011, without any breakdown of how those amounts were arrived at, what was principal, what was interest, what were fees, costs and other assessments, and

e.) SLS – despite request under a subsequent March 14, 2011 letter (see Para. 54 below) – failed and refused to provide proper information justifying what appeared to be some $30,000.00 in various fees, costs and expenses assessed to the Galvins' loan account and failed to provide large amounts of other requested information regarding the servicing of the Galvins' mortgage loan;

f.) As otherwise may be shown at trial.

51.)   Since no default/right to cure notice compliant with Para. 22 of the MERS mortgage was ever sent to the Galvins, their mortgage loan cannot have been lawfully accelerated and any purported foreclosure based thereon is unlawful and void.

52.)   On or about March 3, 2011, U.S. Bank filed a motion to amend their complaint in DUCV-2010-0072 to assert only a request to "remove cloud on title" related to what they averred was a defective and "mistaken" 1st MERS assignment to a non-existent entity.

53.)   On or about June 17, 2011, Georgetown Savings Bank, a second lien holder, filed an appearance and an answer to U.S. Bank's amended complaint in DUCV-2010-0072.

54.)   In DUCV-2010-0072, U.S. Bank named MERS as a defendant.

55.)   On March 14, 2011, in response to the March 2, 2011 default notice, the Galvins, by and through counsel, sent a "Qualified Written Request" ("QWR") to SLS pursuant to

9

12 USC §2605(e) (the "Real Estate Settlement Procedures Act"; "RESPA") and a request for information about the ownership of the Galvins' mortgage loan under the federal Truth In Lending Act at 15 USC §1601 ("TILA").

56.)   By letter dated March 31, 2011, SLS purported to respond to the March 14, 2011 QWR letter.   In the response, SLS identified "U.S. Bank as Trustee Relating to Chevy Chase Funding, LLC Mortgage Back Certificates Series 2007-1" as the "holder" of the note and provided a copy of the note that SLS claimed was the operative note.   The note provide by SLS, however, was in the name of "Chevy Chase Bank FSB" and unendorsed for negotiation to U.S. Bank or any other party making SLS assertions of ownership by U.S. Bank as of March 31, 2011 false and untrue.

57.)   On or about May 26, 2011, U.S. Bank sought and obtained a default as against MERS in DUCV-2010-0072 in order to make it appear as if MERS had some separate legal authority or independent legal involvement in or with the assignment of the Galvins' mortgage loan when MERS never had such status under MERS rules and/or any MERS membership agreement(s).

58.)   The Galvins appeared in DUCV-2010-0072 and on or about June 10, 2011 filed a motion to dismiss pursuant to Mass.R.Civ.P. Rule 12(b)(1) and 12(b)(6).

59.)   On September 2, 2011, the Court (Moriarty, J.) denied the Galvins' motion to dismiss.

60.)   On or about December 5, 2011, U.S. Bank moved for a separate and final judgment against MERS in DUCV-2010-0072 seeking to expunge and nullify the 1st MERS assignment.

10

61.)     On or about December 8, 2011, the Court (Moriarty, J.) allowed U.S. Bank's motion against MERS and ordered the 1st MERS assignment expunged from the public land records.

62.)     Thereafter the parties engaged in discovery and on or about August 3, 2012 U.S. Bank produced to the Galvins a photocopy of what U.S. Bank averred was a copy of the original note endorsed (by undated endorsement) from "Chevy Chase Bank FSB" – generically - to "U.S. Bank as Trustee".

63.)     The copy of the note produced by U.S. Bank in DUCV-2010-0072 in August 2012 was different than the note produced by SLS in their QWR response on March 31, 2011.

64.)     Thereafter, after having obtained the default of MERS and the associated expungement of the 1st MERS assignment from the land records, U.S. Bank voluntarily dismissed DUCV-2010-0072 as to the Galvins who had never filed a responsive pleading as to U.S. Bank's action(s) to expunge the 1st MERS assignment.

65.)     On or about September 7, 2012, the Galvins – by and through counsel – sent another QWR letter to SLS seeking information on the Galvins's loan account including, but not limited to the name, address and phone number of the owner of the Galvins' loan, a then-current copy of the note, evidence and documentation of the various fees, costs and charges that had been assessed to the Galvins loan account and a demand that no party trespass on the Galvins' property.

66.)     On or about October 2, 2012, an assignment of the MERS *mortgage only* appeared on the public land records in the Dukes County Registry of Deeds in Book 1293, Page 909 (the "2nd MERS assignment").

11

67.)  The 2nd MERS Assignment is/was fraudulent, invalid, legally inoperative and void because:

   a.)  On July 17, 2012, MERS owned or held no interests in the Galvins' mortgage to assign because MERS never had any signed MERS membership agreement(s) with Chevy Chase Bank, FSB, U.S. Bank or any other applicable party involved with the Series 2007-1 Trust and/or MERS' interest in the Galvins' mortgage had already been assigned to unknown parties involved in the Series 2007-1 Trust many years earlier;

   b.)  "Thaddeus Larrimer" (Larrimer"), the purported signor of the 2nd MERS assignment, was not duly authorized to execute the 2nd MERS assignment on behalf of MERS;

   c.)  The notary acknowledgment fails/failed to identify the entity (MERS) for whom Larrimer was purporting to sign for, and in what capacity, and thus the notary acknowledgment is materially defective, cannot have been recorded under applicable law, and is void and of no legal effect;

   d.)  On July 17, 2012, MERS itself had no authority under MERS Rules to assign the Galvins' mortgage to any other party;

   e.)  A purported assignment and/or transfer of the mortgage without a simultaneous transfer of the note violated Para. 20 of the MERS mortgage;

   f.)  As otherwise may be shown at any trial on this matter;

68.)  By letter dated September 18, 2012, SLS purported to respond to the September 7, 2012 QWR letter by merely enclosing a copy of SLS' March 31, 2011 QWR response.

12

69.)     By letter dated January 9, 2013, SLS purported to respond to a "debt validation" request by the Galvins and identified the owner of the Galvins' loan as "U.S. Bank National Association" with no trust identified. A "current" copy of the Galvins' note was also provided that was in the name of Chevy Chase Bank FSB and was unendorsed for negotiation to U.S. Bank or any other party.

70.)     At least two (2) copies of the Galvins' note currently exist – one in the name of "Chevy Chase Bank, FSB" and unendorsed for negotiation as provided by SLS to the Galvins on multiple occasions between 2011 and present, and another purportedly endorsed b (by undated endorsement) from "Chevy Chase Bank, FSB" to "U.S. Bank as Trustee" of an unidentified trust as provided in discovery in DUCV-2010-0072.

71.)     "U.S. Bank as Trustee" is not the assignee under the 2nd MERS assignment.

72.)     Since it cannot be determined which – if either – version of the note is valid and it cannot be determined if anyone is the lawful holder of the original note under applicable law, "U.S. Bank as the Trustee as Trustee Relating to Chevy Chase Funding, LLC Mortgage Back Certificates Series 2007-1" does not currently maintain status as the lawful "holder" of the note and therefore lacks standing to foreclose on the property.

73.)     On or about June 28, 2013 an "Affidavit Pursuant to M.G.L. c. 244, s. 35B and 35C" (the June 2013 affidavit") dated May 3, 2013 was recorded on the public land records which purported to state that the holder of the note was "U.S. Bank as the Trustee as Trustee Relating to Chevy Chase Funding, LLC Mortgage Back Certificates Series 2007-1".

74.)     The June 2013 affidavit was executed by one "Mark McCloskey" as a purported "Assistant Vice President" of SLS.

13

75.)     On June 28, 2013 "Mark McCloskey" had no lawful authority to act as an
"Assistant Vice President" of SLS.

76.)     On June 28, 2013 SLS had no lawful authority to execute any documents by, for
or on behalf of U.S. Bank.

77.)     On June 28, 2013 "Mark McCloskey" had no personal knowledge of any of the
matter(s) to which he purported/purports to have attested to.

78.)     The June 2013 affidavit contains false and untrue statements because at no time
during the pendency of DUCV-2010-0072 - or currently – was or is "U.S. Bank as the
Trustee as Trustee Relating to Chevy Chase Funding, LLC Mortgage Back Certificates
Series 2007-1" the holder of the note under applicable law.

79.)     The June 2013 affidavit fails to comply with the requirements of G.L. c. 244, s.
35C.

80.)     On or about October 8, 2014, an "Affidavit Regarding Note Secured by Mortgage
Being Foreclosed" (the "October 2014 affidavit") dated September 26, 2014 and
executed by "Cynthia Wallace" as "Second Assistant Vice President" of SLS was
recorded on the public land records.

81.)     On October 8, 2014 "Cynthia Wallace" had no lawful authority to act as a
"Second Assistant Vice President" of SLS and accordingly such authority is denied to
exist.

82.)     On October 8, 2014, SLS had no lawful authority to execute any documents by,
for or on behalf of U.S. Bank.

83.)     Nowhere in the October 2014 affidavit was/is any indication of what "business
records" "Cynthia Wallace" had or has access to relative to the Galvins' mortgage loan,

14

how, why or if those "business records" are accurate, how they are maintained, who they are maintained by, how prior servicing records from at least two (2) predecessor servicer(s) were transferred properly and accurately to SLS and/or are maintained currently by SLS, or any other number of foundational requirements and "Cynthia Wallace's" attestations are pure hearsay, inadmissible as evidence of anything and are inherently unreliable.

84.)   On October 8, 2014, "Cynthia Wallace" had/has no personal knowledge of the purported facts she attested/attests to in the October 2014 affidavit.

85.)   The October 2014 affidavit contains false and untrue statements because at no time during the pendency of DUCV-2010-0072 - or currently – was or is "U.S. Bank as the Trustee as Trustee Relating to Chevy Chase Funding, LLC Mortgage Back Certificates Series 2007-1" the holder of the note under applicable law.

86.)   The October 2014 affidavit fails to comply with the requirements of G.L. c. 244, s. 35C.

87.)   As a result of non-compliance with G.L. c. 244, s. 35C, U.S. Bank lacks legal standing to foreclose on the property.

88.)   U.S. Bank does not, and never has had, have physical possession of the original note.

89.)   The location of the original note is unknown and it is denied that any party lawfully acting on behalf of U.S. Bank currently holds the note on U.S. Bank's behalf in compliance with applicable law.

90.)   U.S. Bank is not the current owner or holder of the note as defined and/or required under New York law.

15

91.)    Because of the lack of a valid assignment of the MERS mortgage and because
multiple copies of the note exist, the Galvins' mortgage loan was never lawfully
deposited or transferred into the "Chevy Chase Funding, LLC Mortgage Back
Certificates Series 2007-1" in accordance with New York law and U.S. Bank does not
maintain lawful ownership of the Galvins' mortgage loan and cannot lawfully foreclose
on the property.

92.)    The note and mortgage are currently held in separate ownership with the
mortgage being in the name of MERS and the note purportedly being held by either
Chevy Chase Bank, FSB or "U.S. Bank as Trustee" of an unidentified trust. This
"bifurcation" of the note and mortgage interests prevents any foreclosure from lawfully
taking place under Massachusetts law.

93.)    At various times between 2010 and present, U.S. Bank, by and through its agents,
and despite specific notice from the Galvins not to trespass on the property pursuant to
G.L. s. 266, s. 120 (and to contact the Galvins if access to the property was sought),
intentionally trespassed on the property without notice to the Galvins.

94.)    SLS specifically acknowledged the Galvins "no-trespass" notice(s) and advised
that no one would go onto the property. Despite this acknowledgment, multiple
trespasses occurred by and through SLS's agent(s).

95.)    In 2011 and 2012 agents of SLS and/or U.S. Bank went onto the property at a
time when the Galvins were represented by counsel and in communication with SLS
and/or U.S. Bank and had advised that the property was not abandoned and that the
Galvins' were properly maintaining it and changed the locks on the property, illegally
locking out the Galvins.

16

96.)     On or about April 17, 2013, the Galvins, by and through counsel, sent a thirty (30) day demand letter to U.S. Bank by and through its counsel, Harmon Law Offices, PC ("HLO") regarding the illegal lockouts of the Galvins' from their property as well as the intentional and repeated trespasses on the property, the facts and allegations of which are incorporated herein by reference.

97.)     At various times between 2009 and present, U.S. Bank, by and through its agents, assessed various bogus, false and unreasonable fees, costs and charges onto the Galvins' loan account including but not limited to so—called "property inspection" or "property preservation" fees, attorney's fees, broker's price opinion(s) ("BPO's").

98.)     No "inspections" were actually performed of the property by any of U.S. Bank's agents and any attorney's fees, BPO's or other charges, fees or costs were unreasonable in amount and frequency.

99.)     No action(s) to "preserve" the Galvins property were reasonably taken by any of U.S. Bank's agents and any action(s) taken were unlawful (i.e. illegal lockouts), caused damage to the premises and despite this, such "preservation" action(s) were charged tot the Galvins' loan account.

100.)    No property "inspections" or "preservation" action(s) at the property were reasonable or necessary as the Galvins were, at all times, properly maintaining the property and in communication with U.S. Bank and its agents or attorneys and/or available directly through the Galvins's counsel.

101.)    SLS – as the agent of U.S. Bank with respect to the Galvins' mortgage loan – failed to oversee or supervise the actions of any "property inspection" subcontractors to ensure that any actions taken by such subcontractors with respect to the property were

17

reasonable in time, scope and expense and that any such actions comported with the terms of the MERS mortgage and applicable law.

102.) SLS – as the agent of U.S. Bank with respect to the Galvins' mortgage loan - does not maintain any policies or procedures for supervising the actions of any of any "property inspection" subcontractors in order to ensure that any such actions are reasonable in time, scope and expense and that any such actions comport with the terms of the MERS mortgage and applicable law.

103.) By and through the acts, errors, omissions and negligence of MERS and U.S. Bank and or its/their agents as described herein, the Galvins have suffered severe emotional distress.

104.) From the time he began to engage with SLS in 2010 to try and modify the mortgage loan, Mark Galvin has experienced frustration, anger, severe anxiety, sleeplessness, stress and worry about the property due to the repeated trespasses, break-ins and lock outs at the premises by U.S. Bank and its agents including but not limited to SLS and any subcontractors hired by SLS. Mark Galvin spent large amounts of time providing multiple copies of requested information to SLS to be considered for a loan modification and ended up with no legitimate response(s) or consideration. Mark Galvin has lost significant time from work and incurred significant expenses to make numerous unscheduled trips to the property to ensure it is secure and undisturbed, to make police reports about the multiple trespasses and break-ins at the property, to install security camera(s), to hire and perform work on the property to repair and to mitigate damages caused by U.S. Bank and/or its agents. Jenny Galvin has suffered severe emotional as

18

well, including severe anxiety, stress and sleeplessness and these physical symptoms

have exacerbated significant heart issues that Mrs. Galvin currently suffers from.

105.) In October 2014, counsel for the Galvins received notice that U.S. Bank was

intending to foreclose on the property on November 18, 2014.

106.) Given the facts as alleged herein, any such foreclosure would be unlawful and

void.

107.) At the time the property was advertised for sale in October 2014, the Galvins

were actively seeking a buyer for the property and procured an offer of more than

$3,000,000.00 for the property.

108.) The negligent, unlawful and improper advertisement of the property for sale at

foreclosure in October 2014 caused the proposed buyer to withdraw their offer and have

now caused the Galvins to be unable to market the property at a reasonable price due to

the "taint" of the foreclosure.

## COUNT ONE
### (declaratory judgment; all parties)

109.) The Galvins hereby repeat and re-allege the allegations in the foregoing numbered

paragraphs as more fully set forth herein.

110.) This Court has jurisdiction to hear the controversy and determine the rights of the

respective parties in the legal title to the property.

111.) The Galvins have alleged that U.S. Bank has no right, title or interest in the

MERS mortgage or the note, failed to properly default the Galvins under the terms of

MERS mortgage and that U.S. Bank lacks standing to foreclose on the Galvins' property

or to collect any moneys from the Galvins under the note.

19

112.) The Galvins seek a determination from this Court regarding the rights, status, legal relations and responsibilities of the parties to this suit with respect to the MERS mortgage and the note and the foreclosure of the property.

113.) The Galvins seek a declaratory judgment from the Court that U.S. Bank has/have no right title or interest in the MERS mortgage or the note, that U.S. Bank failed to properly default the Galvins, that the 2nd MERS assignment is void and of no legal effect and that any foreclosure based on the foregoing is unlawful, invalid and void.

## COUNT TWO
(Breach of Contract as applicable; U.S. Bank and MERS)

114.) The Galvins repeat and re-allege the allegations in the foregoing numbered paragraphs as more fully set forth herein.

115.) A contract for payment of moneys under the note existed by and between the Galvins and Chevy Chase Bank FSB.

116.) U.S Bank or its predecessors in interest, agents, employees, or attorneys purport to have obtained rights in the mortgage loan document(s) (the note and mortgage) under the 2nd MERS assignment or otherwise.

117.) The Galvins deny that U.S. Bank lawfully obtained any interests in the MERS mortgage from MERS as further described herein.

118.) The Galvins deny that U.S. Bank lawfully obtained any interests in the note as further described herein.

119.) If U.S. Bank and/or MERS is able to show that it lawfully obtained rights in the mortgage loan by assignment, MERS and/or U.S. Bank breached the terms of the MERS mortgage by failing to comply with the terms thereof including but not limited to complying with applicable law (as defined in the mortgage) and the requirements of

Paragraph 20 and 22 before defaulting and attempting to foreclose on the property as further stated herein or as may be shown at any trial on this matter.

120.) As a result thereof, the Galvins have suffered damages.

**COUNT THREE**
(Breach of the Implied Covenant of Good Faith and Fair Dealing as applicable; U.S. Bank and MERS)

121.) The Galvins repeat and re-allege the allegations in the foregoing numbered paragraphs as more fully set forth herein

122.) If shown to be parties to the Galvins' mortgage loan contract(s), U.S. Bank, MERS and the Galvins are bound by a duty of good faith and fair dealing to one another.

123.) U.S. Bank and MERS by themselves or by and through its/their agents, breached its/their duty of good faith and fair dealing by and through its/their intentional actions, negligence, errors and omissions and violations of the MERS rules, membership agreement(s), the MERS mortgage and applicable law as further described herein including but not limited to unlawfully attempting to assign interests in the MERS mortgage and the note, trespassing on the Galvins property, unlawfully locking them out in multiple occasions, failing to properly consider the Galvins for a loan modification, assessing unreasonable fees, costs and assessments to their account, failing to give them proper notice(s) under the MERS mortgage and applicable law and committing unfair and deceptive acts and practices in violation of G.L. c. 93A or as otherwise may be shown at trial.

124.) As a result thereof, the Galvins have suffered damages.

21

## COUNT FOUR
(trespass; U.S. Bank)

125.) The Galvins repeat and re-allege the allegations in the foregoing numbered paragraphs as more fully set forth herein.

126.) U.S. Bank and/or its agents went onto the Galvins property multiple times between 2009 and present despite specific notice(s) from the Galvins, the Galvins' counsel and the not to trespass on the property and for U.S. Bank and its attorneys to advise all parties of the no-trespass notice(s) pursuant to G.L. c. 266, s. 120.

127.) U.S. Bank or its or agents unlawfully locked the Galvins out of the property on at least two (2) occasions in 2011 and 2012.

128.) As a result thereof, the Galvins have suffered damages.

## COUNT FIVE
(negligence; Capital One, U.S. Bank and MERS)

129.) The Galvins repeat and re-allege the allegations in the foregoing numbered paragraphs as more fully set forth herein.

130.) As a party engaged in a mortgage contract with the Galvins, MERS owed a duty of care to the Galvins to follow the MERS rules and applicable law regarding the sale(s), assignment(s) and/or transfer(s) of the MERS mortgage.

131.) MERS breached their duty to the Galvins by failing to properly supervise its members (if any) who were performing any action(s) with respect to the MERS mortgage and by failing comply with applicable MERS rules with respect to the sale(s), assignment(s) and transfer(s) of the MERS mortgage as stated herein.

132.) As a party engaged in contract(s) with the Galvins (the note and MERS mortgage), Chevy Chase Bank, FSB, n/k/a Capital One, owed a duty of care to the

22

Galvins to follow applicable law an procedures regarding the sale(s), assignment(s) and/or transfer(s) of the MERS mortgage and their note.

133.) Chevy Chase Bank, FSB, n/k/a Capital One breached their duty to the Galvins by failing to properly supervise any parties who were performing any action(s) with respect to the sale(s), assignment(s) and/or transfer(s) of the Galvins' mortgage loan interests as stated herein.

134.) If a contract is shown to exist between U.S Bank and that Galvins by virtue of a lawful assignment of the MERS mortgage and note interests to U.S. Bank, U.S. Bank owed a duty of care to the Galvins with respect to complying with the applicable provisions of the MERS mortgage and applicable law.

135.) U.S. Bank breached its duty of care to the Galvins by failing to properly supervise its agents, including but not limited to MERS and SLS, and by failing to comply with applicable provisions of the MERS mortgage and applicable law as stated herein.

136.) U.S. Bank's negligent, improper and unlawful advertising of the property for foreclosure in October 2014, when they have no standing to foreclose thereon, has rendered the property unmarketable at any reasonable market price.

137.) As a result thereof, the Galvins have suffered damages.

138.) The proximate cause of the Galvins damages was/were caused by the negligence of Chevy Chase Bank, FSB, n/k/a Capital One, MERS and U.S. Bank and/or their agents.

## COUNT SIX
### (Violation(s) of G.L. c. 93A; U.S. Bank)

139.) The Galvins repeat and re-allege the allegations in the foregoing numbered paragraphs as more fully set forth herein.

23

140.)   On or about April 17, 2013, the Galvins sent a thirty (30) day demand letter to

U.S. Bank – by and through U.S. Bank's counsel – alleging unfair and deceptive acts and

practices involving, among other things, the break-in and illegal lock-out of the Galvins

from the property on at least two (2) occasions.   The facts and allegations contained in

the April 17, 2013 letter are incorporated herein by reference.

141.)   As a result thereof, the Galvins has/have suffered damages.

### COUNT SEVEN
(intentional and/or negligent infliction of emotional distress; Capital One, MERS and
U.S. Bank)

142.)   The Galvins repeat and re-allege the allegations in the foregoing numbered

paragraphs as more fully set forth herein.

143.)   The Galvins has/have suffered from severe emotional distress the proximate cause

of which is/was the unlawful and/or unfair and deceptive acts and/or practices of Capital

One, MERS and U.S. Bank and its/their agents as described herein.

144.)   The Galvins emotional distress is evidenced by physical symptoms as described

herein.

145.)   The actions, omissions and unlawful and/or unfair and deceptive acts and/or

practices of Capital One, MERS and U.S. Bank as described herein were extreme and

outrageous and have no place in a civilized society.

146.)   Capital One, MERS and U.S. Bank knew or should have known that their

unlawful or unfair and deceptive act(s) or practice(s) in failing to follow their own rules,

in failing to properly supervise the lawful sale(s), transfer(s) or assignment(s) of the

Galvins' mortgage loan, in failing to supervise their own members, agents or servicer(s)

24

and in proceeding to foreclose on the property is/was likely to cause the Galvins to suffer severe emotional distress.

147.) The Galvins' emotional distress is/was severe and no reasonable person(s) could be expected to endure it.

148.) As a result thereof, the Galvins has/have suffered damages.

WHEREFORE the Galvins pray this Honorable Court award them judgment on Count One through Seven of their Complaint while awarding them treble damages, their attorney's fees and costs of suit and any such other and further relief as the Court deems meet and just.

## DEFENDANTS REQUEST A TRIAL BY JURY ON ALL COUNTS SO TRIABLE

DATED:        November /1, 2014
              Nantucket, MA

Jamie Ranney, Esq. BBO#643379
Jamie Ranney, PC
4 Thirty Acres Lane
Nantucket, MA 02554
508-228-9224 (tel.)
508-815-1318 (efax)
jamie@nantucketlaw.pro