UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 14-14723-RGS

MARK B. GALVIN and JENNY G. GALVIN

v.

U.S. BANK NATIONAL ASSOCIATION as TRUSTEE RELATING TO
CHEVY CHASE FUNDING, LLC MORTGAGE BACK CERTIFICATES
SERIES 2007-1;
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.;
CAPITAL ONE, N.A., a/k/a CAPITAL ONE BANK, f/k/a CHEVY CHASE
BANK, FSB

MEMORANDUM AND ORDER ON DEFENDANTS' PARTIAL
MOTION TO DISMISS

March 9, 2015

STEARNS, D.J.

Plaintiffs Mark and Jenny Galvin challenge the November 2014 foreclosure of property they owned at 14 Skip Jack Way, Tisbury (Vineyard Haven), Dukes County, Massachusetts. They seek a declaration that defendants U.S. Bank National Association as Trustee Relating to Chevy Chase Funding, LLC Mortgage Back Certificate Series 2007-1 (U.S. Bank Trustee), and Mortgage Electronic Registration Systems, Inc. (MERS) lacked sufficient title to force a sale (Count I). They also allege that defendants breached the terms of the mortgage contract (Count II) and its implied covenant of good faith and fair dealing (Count III); that U.S. Bank

Trustee committed common-law trespass on the property (Count IV); that defendants failed to supervise actions taken by others with respect to the administration of the mortgage (Count V); that U.S. Bank Trustee engaged in unfair and deceptive business practices in violation of the Massachusetts Consumer Protection Act, ch. 93A (Count VI); and that defendants intentionally and/or negligently caused them emotional distress (Count VII). Defendants[1] move to dismiss Counts I, II, III, V, and VII (this count as to MERS only) pursuant to Fed. R. Civ. P. 12(b)(6).

## BACKGROUND

In 2006, the Galvins took out a loan of $2,385,000 from Chevy Chase Bank and executed a mortgage on the property to MERS "solely as nominee for Lender and Lender's successors and assigns." Defs.' Ex. A – MERS Mortgage at 1. *See Alt. Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001) (In resolving a motion to dismiss, the court may properly consider "documents the authenticity of which are not disputed by the parties; [] official public records; [] documents central to plaintiffs' claim; or [] documents sufficiently referred to in the complaint."). In late 2009, plaintiffs defaulted on their loan. In March of 2011, they received a "Notice of Default and Intent to Foreclose" from Specialized

---

[1] Capital One, N.A., a/k/a Capital One Bank, f/k/a Chevy Chase Bank, FSB, has yet to appear in this litigation.

Loan Servicing, LLC (SLS), the servicer on the mortgage. In July of 2012, MERS assigned the mortgage to U.S. Bank Trustee. The assignment was recorded in the Dukes County Registry of Deeds in October of 2012.[2] *See Boateng v. Interamerican Univ., Inc.*, 210 F.3d 56, 60 (1st Cir. 2000) ("[A] court may look to matters of public record in deciding a Rule 12(b)(6) motion without converting the motion into one for summary judgment.").

In May of 2013, an "Affidavit Pursuant to M.G.L. Ch. 244, §§ 35B and 35C"[3] was recorded in the Dukes County Registry of Deeds stating that U.S. Bank Trustee was the holder of the promissory note secured by the MERS mortgage. A further "Affidavit Regarding Note Secured by Mortgage Being Foreclosed" was recorded in the Dukes County Registry of Deeds in October of 2014, indicating that U.S. Bank Trustee then held both the mortgage and the note on the Galvins' property. U.S. Bank Trustee foreclosed on the property in November of 2014.

---

[2] A previous assignment by MERS was judicially nullified and expunged as having been assigned to a non-juridical entity.

[3] Mass. Gen. Laws ch. 244, § 35C(b) requires that "[a] creditor shall not cause publication of notice of foreclosure . . . when the creditor knows that the mortgagee is neither the holder of the mortgage note nor the authorized agent of the note holder," and that "[p]rior to publishing a notice of a foreclosure sale . . . the creditor, or . . . an officer or duly authorized agent of the creditor, shall certify compliance with this subsection in an affidavit based upon a review of the creditor's business records."

## DISCUSSION

In evaluating a motion to dismiss,

> we assume the truth of all well-pleaded facts and indulge all reasonable inferences that fit the plaintiff's stated theory of liability. *Rogan v. Menino,* 175 F.3d 75, 77 (1st Cir.1999); *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir. 1996). We are not bound, however, to credit "bald assertions, unsupportable conclusions, and opprobrious epithets" woven into the fabric of the complaint. *Chongris v. Bd. of Appeals,* 811 F.2d 36, 37 (1st Cir. 1987) (citation and internal quotation marks omitted).

*In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003).

*Count I – Declaratory Judgment of Invalid Foreclosure*

Plaintiffs' first broadside is aimed principally at MERS. The Galvins argue that the July 2012 MERS assignment to U.S. Bank Trustee was void because MERS as a nominee mortgagee held no assignable interest in the underlying promissory note; moreover, that the entire transaction contravened MERS' internal rules (under these rules MERS acts as a nominee mortgagee only for members that have signed the MERS membership agreement – plaintiffs allege that neither Chevy Chase Bank nor U.S. Bank Trustee are members of MERS); and these arguments aside, defendants violated paragraphs 20 and 22 of the underlying mortgage contract.

Applying "venerable precedents," the First Circuit has squarely deflected plaintiffs' first arrow of contention – that MERS did not possess

4

an assignable interest in the note. *See Culhane v. Aurora Loan Servs. of Nebraska*, 708 F.3d 282, 293 (1st Cir. 2013).

> Massachusetts law makes pellucid that the mortgage and the note are separate instruments; when held by separate parties, the mortgagee holds a bare legal interest and the noteholder enjoys the beneficial interest. *See* [*Eaton v. Fed. Nat'l Mortg. Ass'n*, 462 Mass 569, 575-576 (2012)]. The mortgagee need not possess any scintilla of a beneficial interest in order to hold the mortgage. . . .
>
> MERS had the authority twice over to assign the mortgage to Aurora. This authority derived both from MERS's status as equitable trustee [for the noteholder] and from the terms of the mortgage contract. . . . The mortgage papers denominated MERS as mortgagee "solely as nominee for [Preferred] and [Preferred]'s successors and assigns." Under Massachusetts law, a nominee in such a situation holds title for the owner of the beneficial interest. *See Morrison v. Lennett,* 415 Mass. 857, [860-861] (1993); Black's Law Dictionary 1149. MERS originally held title as nominee for Preferred; Preferred assigned its beneficial interest in the loan to Deutsche; and Deutsche designated Aurora as its loan servicer. MERS was, therefore, authorized by the terms of the contract to transfer the mortgage at the direction of Aurora.
>
> In the assignment, MERS transferred to Aurora what it held: bare legal title to the mortgaged property. That transfer was valid.

*Id.*[4]

---

[4] Plaintiffs also complain that MERS has failed to convince them that it was authorized by the actual noteholder in July of 2012 to transfer the mortgage. They point to the fact that the first Section 35 affidavit reflecting U.S. Bank Trustee's ownership of the note was not recorded until May of 2013. However, as the second Section 35 affidavit makes clear, U.S. Bank

Plaintiffs' second sally, that the mortgage and the assignment violated MERS rules, rests on an infirmity that, at best, might render the transactions voidable by MERS members, but it does not make them void.

> "Void" contracts or agreements are "those . . . that are of no effect whatsoever; such as are a mere nullity, and incapable of confirmation or ratification." *Allis v. Billings,* 47 Mass. 415, 417 (1843). By contrast, "voidable" refers to a contract or agreement that is "injurious to the rights of one party, which he may avoid at his election." *Ball v. Gilbert,* 53 Mass. 397, 404 (1847). Thus, while the party injured by a voidable contract has the option of avoiding its obligations, it may choose instead to ratify the agreement and hold the other party to it.

*Wilson v. HSBC Mortg. Servs., Inc.,* 744 F.3d 1, 9 (1st Cir. 2014). The Galvins do not allege any irregularity in the formation of the mortgage contract – they received $2,383,000 in exchange for executing the promissory note and the mortgage. It will come as no surprise that under the circumstances, plaintiffs cannot claim to be the adventitious beneficiaries of irregular compliance by MERS with its own internal rules.

> A claim that a corporate party has violated its own internal procedures in the course of executing an assignment of its rights amounts to nothing more than a claim that the corporate officer who executed the assignment has exceeded the scope of his or her authority. As both this court and the Court of Appeals have noted, that type of claim merely renders an assignment voidable at the election of the assignor.

---

Trustee held both the note and the mortgage prior to the foreclosure. Consequently, the sequence of the transfers is of no import.

*Galvin v. EMC Mortg. Corp.*, 2014 WL 4823657, at *5 (D.N.H. Sept. 25, 2014);[5] *see also Wilson*, 744 F.3d at 10 ("[W]hen a corporate officer acts beyond the scope of his authority, [h]is acts in excess of his authority, although voidable by the corporation, legally could be ratified and adopted by it.") (quotation marks omitted).[6] Plaintiffs, who (it goes without saying) are not a party to the MERS membership agreement, perforce "do[] not have standing to challenge shortcomings in an assignment that render it merely voidable at the election of one party but [is] otherwise effective to pass legal title." *Culhane*, 708 F.3d at 291.

Plaintiffs' next thrust is targeted at the mortgage contract itself. The Galvins claim that paragraph 20, which states that "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower," Defs.' Ex. A at 11, requires that the mortgage be transferred together with the note. The First Circuit rejected this attack on another MERS mortgage with identical language as "jejune" – "[f]or one thing, this language is permissive and by

---

[5] This opinion was issued with respect to identical arguments made in a futile objection to the foreclosure of property the Galvins had mortgaged in New Hampshire.

[6] Plaintiffs' concluding cavils, that the executer of the assignment (Thaddeus Larrimer) lacked lawful signing authority and that the assignment was improperly notarized, similarly render the transaction voidable at best.

7

no means prohibits the separation of the two instruments. For another thing, the instruments were separated upon their inception: Preferred was granted the note and MERS the mortgage." *Culhane*, 708 F.3d at 293 n.6.

The Galvins finally contend that defendants breached paragraph 22 of the mortgage. Paragraph 22, in relevant portions, states:

> Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in the acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law.

Plaintiffs allege that the March 2011 default notice failed to comply with paragraph 22 because: (1) it did not issue from the lender (the sender was SLS, the servicer); (2) it failed to correctly identify the true owner of the debt (the notice listed SLS as the creditor); and (3) it listed a total overdue

8

amount of $30,000 without providing an itemization (which the Galvins requested by letter).

None of these alleged deficiencies are borne out by a plain reading of the mortgage. Paragraph 22 does not require the lender to personally send the default notice. As the Galvins acknowledge in their Complaint, SLS was the mortgage servicer and as such was authorized to act on behalf of the lender. *See R.G. Fin. Corp. v. Vergara-Nunez*, 446 F.3d 178, 187 (1st Cir. 2006) ("Typically, a mortgage servicer acts as the agent of the mortgagee to effect collection of payments on the mortgage loan."). The Galvins wax wroth over the lack of an itemization of the overdue amount they owed, but one is not required by paragraph 22. Moreover, they are unable to demonstrate any prejudice flowing from the form of the default notice – most significantly, they do not allege that they did not owe the money demanded in the notice.[7,8]

---

[7] Defendants properly note that the failure to strictly adhere to statutory notice requirements would invalidate a foreclosure only if the violations "rendered the foreclosure so fundamentally unfair that [they are] entitled to affirmative equitable relief, specifically the setting aside of the foreclosure sale for reasons other than failure to comply strictly with the power of sale provided in the mortgage." *Coelho v. Asset Acquisition & Resolution Entity, LLC,* 2014 WL 1281513, at *2 (D. Mass. Mar. 31, 2014), quoting *U.S. Bank Nat'l Ass'n v. Shumacher*, 467 Mass 421, 433 (2014) (C.J. Gants, concurring).

9

*Count III – Breach of the Covenant of Good Faith and Fair Dealing*

The Galvins allege that defendants breached the covenant of good faith and fair dealing by: (1) violating MERS' internal rules, its membership agreement, and the strict terms of the mortgage; (2) unlawfully assigning the mortgage; (3) repeatedly trespassing on the property; (4) providing inadequate notice of default; and (5) failing to agree to a modification of their mortgage. The covenant of good faith reflects an implied condition that inheres in every contract "that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 471 (1991). "The covenant may not, however, be invoked to create rights and duties not otherwise provided for in the existing contractual relationship, as the purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance." *Uno Rests., Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004).

As previously noted, the Galvins have no standing to enforce the MERS rules or its membership agreement. They have also not pled facts of

---

[8] Similarly, plaintiffs' factual allegations fail to state a claim of breach of contract based on paragraphs 20 and 22 of the mortgage as a matter of law.

sufficient plausibility to support a viable claim of breach of contract in the assignment of the mortgage, or in the issuance of the default notice. The claims of trespass (and alleged illegal lockouts) implicate rights that arise independently of the mortgage contract. Finally, the mortgage does not give the Galvins a right to a modification of the terms to which they agreed upon accepting the proceeds.[9] Because the litany of alleged abuse does not concern the formation or performance of any contractual term, there can be no breach of the covenant of good faith as a matter of law.

*Count V – Negligence*

The Galvins next allege that MERS negligently failed to abide by its membership agreements and rules in supervising MERS members, and that U.S. Bank Trustee negligently failed to supervise its agents in insuring compliance with the MERS mortgage terms and applicable laws. To make out a negligence cause of action, plaintiffs must allege "(1) a legal duty owed by defendant to plaintiff; (2) a breach of that duty; (3) proximate or legal cause; and (4) actual damage or injury." *Jorgensen v. Massachusetts Port Auth.*, 905 F.2d 515, 522 (1st Cir. 1990).

---

[9] Plaintiffs also do not challenge the assertion by defendants' in the October 2014 affidavit that their mortgage was not eligible for statutory modification.

As defendants correctly note, "a lender owes no general duty of care to a borrower." *Corcoran v. Saxon Mortg. Servs., Inc.*, 2010 WL 2106179, at *4 (D. Mass. May 24, 2010); *see also Shaw v. BAC Home Loans Servicing, LP*, 2013 WL 789195, at *4 (D. Mass. Mar. 1, 2013) ("[T]he mere relationship between mortgage holder or servicer and borrower does not give rise to a fiduciary duty to the latter."). Plaintiffs contend that they were third-party beneficiaries of the MERS membership agreement and that MERS as a consequence owed them a duty of care. It is not necessary to explore at any length the theory that status as a third-party beneficiary gives rise to a duty incumbent on a party to the underlying contract[10] because the Galvins expressly concede that none of the putative tortfeasors were MERS members or parties to the membership Agreement.

With respect to U.S. Bank Trustee, the Galvins' allegations amount to no more than an attempt to recast the breach of contract claim into a claim based on a theory of negligent breach of contract. The theory founders on the well established proposition that the "failure to perform a contractual

---

[10] "Where a contractual relationship creates a duty of care to third parties, the duty rests in tort, not contract, and therefore a breach is committed only by the negligent performance of that duty, not by a mere contractual breach." *LeBlanc v. Logan Hilton Joint Venture*, 463 Mass. 316, 328 (2012).

obligation is not a tort in the absence of a duty to act apart from the promise made." *Anderson v. Fox Hill Vill. Homeowners Corp.*, 424 Mass. 365, 368 (1997). Because the defendants owed no duty of care to the plaintiffs by virtue of their status as a mortgagee-creditor, the negligence claim fails as a matter of law.[11]

*Count VII – Intentional Infliction of Emotional Distress (as to MERS only)*

To make out a count of intentional infliction of emotional distress, plaintiffs must allege acts that are "extreme and outrageous," either reasonably viewed as an attempt "to shock and harm a person's peace of mind," or if not individually such, are part of a pattern of harassment intended to accomplish the same end. *See Ratner v. Noble*, 35 Mass. App. Ct. 137, 139-140 (1993); *Foley v. Polaroid Corp.*, 400 Mass. 82, 99 (1987)

---

[11] So too does plaintiffs' claim of negligent infliction of emotional distress.

> As the plaintiff points out, a mortgagee exercising a power of sale has a contractual duty to act in good faith, and to use reasonable diligence to protect the mortgagor's economic interest in maximizing the sale proceeds. *Williams v. Resolution GGF OY,* 417 Mass. 377, 382-383 (1994). But the existence of that contractual duty provides no support to the plaintiff's theory that a party in the position of the defendant here has a general duty in the course of servicing a loan to exercise care to protect the plaintiff's emotional condition.

*Calautti v. Am. Home Mortg. Servicing, Inc.*, 2012 WL 5240262, at *6 (Mass. Super. Aug. 7, 2012).

(appalling conduct required to trigger the tort); *Conway v. Smerling*, 37 Mass. App. Ct. 1, 8 (1994) (same, "profoundly shocking" conduct); *see also Sena v. Commonwealth*, 417 Mass. 250, 264 (1994) (Whether a defendant's conduct is "beyond all bounds of decency and . . . utterly intolerable in a civilized community" is an issue of law for the trial judge.).

In essence, plaintiffs allege nothing more than possible technical defects in MERS's assignment of the mortgage. It is impossible to weave with this thin thread any conceivable raiment of personal hurt that would shock a civilized community (or a judge inured to the ways of commerce), especially where those pleading victimhood cannot have been themselves shocked by the efforts of their creditors to collect on a debt that they admittedly owed.

## ORDER

For the foregoing reasons, defendants' partial motion to dismiss Counts I, II, III, V, and VII (this count as to MERS only) of the Complaint is <u>ALLOWED</u>.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE