UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 14-14723-RGS

MARK B. GALVIN and JENNY G. GALVIN

v.

U.S. BANK NATIONAL ASSOCIATION as TRUSTEE
RELATING TO CHEVY CHASE FUNDING, LLC MORTGAGE BACK
CERTIFICATES SERIES 2007-1 et al.

SUPPLEMENTAL MEMORANDUM AND ORDER ON DEFENDANT U.S.
BANK TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

December 11, 2015

STEARNS, D.J.

On October 1, 2015, the court allowed defendant U.S. Bank Trustee's motion for summary judgment on its counterclaim for possession of 14 Skip Jack Way, Tisbury (Vineyard Haven), Massachusetts. At that time, the court deferred ruling on plaintiffs Mark and Jenny Galvin's three remaining claims, trespass (Count IV); unfair and deceptive practices in violation of the Massachusetts Consumer Protection Act, ch. 93A (Count VI); and intentional and/or negligent infliction of emotional distress (Count VII), as well as U.S. Bank's two outstanding counterclaims, breach of contract/deficiency judgment (Count I); and unjust enrichment (Count II). As the trespass claim forms the foundation of plaintiffs' Chapter 93A and emotional distress

claims, the court permitted plaintiffs to conduct additional "targeted discovery on the extent and reasonableness of U.S. Bank Trustee's entries, inspections, and repairs to the property within three years (the statute of limitation) preceding the filing of the Complaint." Dkt. # 56.  Following that discovery, the parties filed supplemental briefs and exhibits in support of their respective positions.

The relevant facts are largely undisputed, and where disputed, will be viewed in the light most favorable to the Galvins as the nonmoving party.  *See* Fed. R. Civ. P. 56.  In 2006, the Galvins took out a loan of $2,385,000 and executed a mortgage on the Vineyard Haven property, a waterfront house that they occupied seasonally as a second home.  In November of 2009, the Galvins defaulted on the loan.  Subsequent to the default, Special Loan Servicing, LLC (SLS), the company contracted by U.S. Bank Trustee to service the mortgage, conducted monthly inspections of the property.[1,2] On

---

[1] Loretta Poch, the representative for SLS, testified at her deposition that SLS's servicing agreements typically required monthly inspections after a mortgagor's default, until such a time the default is cured or otherwise resolved.  Poch Dep. at 26-27, 31.

[2] SLS contracts with a separate company to perform the actual inspections.

two occasions, during the winters of 2011 and 2012, finding the home vacant, the inspector took steps to winterize the property and to change a lock.[3]

In November of 2014, U.S. Bank Trustee foreclosed on the mortgage and purchased the property at the foreclosure sale for $2,295,000. U.S. Bank Trustee seeks a deficiency judgment in the amount of $204,535.02, the difference between the amount in principle and interest owed on the note ($2,499,535.02), and the foreclosure sale price. Although SLS assessed $366 to the Galvins' account for the cost for the winterization and security work performed on the property in the winter of 2012, U.S. Bank Trustee does not seek to recover that amount in its deficiency judgment.

U.S. Bank Trustee is entitled to summary judgment on the Galvins' trespass claim. "A trespasser has been defined as 'a person who enters or remains upon land in the possession of another without a privilege to do so, created by the possessor's consent or otherwise.'" *Gage v. City of Westfield*, 26 Mass. App. Ct. 681, 696 (1988), quoting Restatement (Second) of Torts, § 329 (1965). The Galvins, by executing the Mortgage, granted U.S. Bank

---

[3] Ms. Poch testified that when it is necessary to enter a home to perform maintenance work, it is SLS's policy to change only one of the locks at the home so that the borrowers may still enter the property through the entries with unchanged locks. Poch Dep. at 83-84.

Trustee (successor in interest to the original mortgagee) a conditional right of entry onto the property.

> 9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument . . . then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. . . . Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off.

Def.'s Ex. A at 7-8.

The Galvins admit that their November of 2009 default triggered the terms of Paragraph 9, but contend that SLS's monthly inspections were not "reasonable or appropriate" because they, through their attorney, represented to U.S. Bank Trustee that they occupied, secured, and properly maintained the property.  The Galvins also protest that U.S. Bank Trustee inspected the home without giving them prior notice or seeking their consent despite multiple requests that the bank do so.  Paragraph 9, however, does not require notice or prior authorization in the event of plaintiffs' breach of the Mortgage terms.  Paragraph 9 also explicitly authorizes U.S. Bank Trustee to take the action it did in "securing and/or repairing the Property

4

. . . include[ing] entering the Property to make repairs, change locks, . . . [and] eliminate dangerous conditions . . . ." Given that the Vineyard Haven house was a multi-million dollar water front home that was only seasonally occupied, an objective factfinder could not reasonably conclude that U.S. Bank Trustee's actions to protect its significant financial investment were not "reasonable or appropriate."

Because U.S. Bank Trustee acted within the authorized scope of the Mortgage contract, it did not commit trespass as a matter of law. *See Dickinson v. Countrywide Home Loans, Inc.*, 2012 WL 163883, at *6 (W.D. Mich. Jan. 19, 2012) (no trespass where the same mortgage language granted lender the right to inspect and winterize property after default); *Tennant v. Chase Home Fin., LLC*, 2015 WL 4506525, at *7 (Ala. Civ. App. July 24, 2015) (same); *Vinal v. Fed. Nat. Mortgage Ass'n*, 2015 WL 5535191, at *9 (E.D.N.C. Sept. 18, 2015) (same). Plaintiffs' Chapter 93A and the emotional distress claims, being derivative of the trespass claim, also fail as a matter of law.

Turning to the U.S. Bank Trustee's counterclaims, there is no dispute that under their promissory note, *see* Def.'s Ex. L, the Galvins are obligated to make good any deficiency resulting from the sale of the property at

5

foreclosure.[4]  Unjust enrichment is an "equitable stopgap for occasional inadequacies in contractual remedies at law." *Mass. Eye and Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 234 (1st Cir. 2005).  Where a binding contract governs the parties' relationship, the contract provides the measure of the [aggrieved party's] right and no action for unjust enrichment lies.  *McKesson HBOC, Inc. v. New York State Common Retirement Fund, Inc.*, 339 F.3d 1087, 1091 (9th Cir. 2003).  Because U.S. Bank Trustee has an adequate remedy at law, its equitable counterclaim for unjust enrichment will be dismissed.

### ORDER

For the foregoing reasons, U.S. Bank Trustee's motion for summary judgment is <u>ALLOWED</u> as to Counts IV, VI, and VIII of the Galvins' Complaint and Count I of U.S. Bank Trustee's counterclaim.  COUNT II of the Counterclaim is <u>DISMISSED</u>.  The Clerk will enter judgment for U.S. Bank Trustee in the amount of $204,535.02 and close the case.

SO ORDERED.

/s/ Richard G. Stearns

_____

UNITED STATES DISTRICT JUDGE

---

[4] Pursuant to Mass. Gen. Laws ch. 244, § 17B, U.S. Bank Trustee provided the Galvins notice of the intent to foreclose and seek a deficiency judgment in October of 2014.